IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CANDACE M. BROWN,                                  Civil No. 05-6120-AA

            Plaintiff,                             OPINION AND ORDER

        v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

            Defendant.
_____

Kathryn Tassinari
Drew L. Johnson
1700 Valley River Drive, First Floor
Eugene, OR 97401
     Attorneys for plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902


1 - OPINION AND ORDER

Jeffrey Baird
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
        Attorneys for defendant

AIKEN, Judge:

        Plaintiff Candance Brown brings this action pursuant to the
Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain
judicial review of the Commissioner's decision denying her
application for disability insurance benefits and supplemental
security income (SSI) disability benefits under Titles II and XVI
of the Act.  For the reasons set forth below, the decision of the
Commissioner is reversed and remanded for further proceedings.

                            BACKGROUND

        On July 12, 2001, plaintiff applied for disability benefits,
and her applications were denied initially and on reconsideration.
Tr. 61-63, 283-87.  After timely requesting a hearing, plaintiff,
her husband, and medical and vocational experts appeared and
testified before an Administrative Law Judge (ALJ) on June 23,
2004.  Tr. 299-354.  On September 13, 2004, the ALJ issued a
decision finding plaintiff not disabled within the meaning of the
Act.  Tr. 11-24.  The Appeals Council denied plaintiff's request
for review, making the ALJ's decision the final agency decision.
Tr. 6-8.  Plaintiff now seeks judicial review of the Commissioner's
denial of benefits.  42 U.S.C. § 405(g).

        At the time of the administrative hearing, plaintiff was

2 - OPINION AND ORDER

fifty-seven years old, with a ninth-grade and past work experience as a photographer's helper.  Tr. 302-03.  Plaintiff alleges disability since December 26, 2000, due to depression, post-traumatic stress disorder, panic disorders, and anxiety.  Tr. 61-63, 283.

STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)).  The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.
///

COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner employs a five-step sequential process to determine whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520 416.920. At step one, the ALJ found that plaintiff had not performed "substantial gainful activity" during the period of alleged disability. Tr. 15; <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At steps two and three the ALJ found that plaintiff has "medically severe impairments" of depression, anxiety disorder, possible adjustment disorder, and a history of migraine headaches, but that these impairments did not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Tr. 18-19; <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§ 404.1520(c) and (d), 416.920(c) and (d).

At step four, the ALJ found that plaintiff retained the residual functional capacity (RFC) to perform past work as a scrap

4 - OPINION AND ORDER

metal recycler that did not rise to the level of substantial gainful activity, but that plaintiff could not perform her "past relevant work" as a photographer's helper. Tr. 20-21; 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Regulation (SSR) 96-8p. Thus, the inquiry moved to step five.

At step five, the burden rests with the Commissioner to establish that the claimant is capable of performing other work that exists in significant numbers in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). Relying on the Medical-Vocational Guidelines and vocational expert testimony, the ALJ found that plaintiff could perform other work existing in the national economy, including positions as a stock intake receiving clerk, light groundskeeper, and janitorial worker. Tr. 22. Accordingly, the ALJ found plaintiff not disabled within the meaning of the Act.  Tr. 23.

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed and remanded for an award of benefits, because the ALJ failed to give clear and convincing reasons for rejecting the opinion of Gale Smolen, M.D., plaintiff's treating psychiatrist, and plaintiff's subjective complaints.  Plaintiff argues that if the opinion of Dr. Smolen and plaintiff's allegations are credited as true, she has established disability under the Act.

Dr. Smolen began treating plaintiff in June of 2002. Tr. 219-

5 - OPINION AND ORDER

20. In October of 2002, Dr. Smolen conducted a "psychodiagnostic evaluation" of plaintiff's mental status. Tr. 202-06. Dr. Smolen diagnosed plaintiff with Post-Traumatic Stress Disorder, Major Depression, Panic Attacks, and Migraine Headaches. Tr. 206. According to Dr. Smolen's report, her diagnoses were based on plaintiff's self-reported history and symptoms.

On May 10, 2004, Dr. Smolen completed a Mental RFC Assessment and opined that plaintiff had moderately severe limitations in her ability to: accept instructions and respond appropriately to criticism; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Tr. 258. Further, Dr. Smolen found that plaintiff had severe limitations in her ability to: work in coordination with or proximity to others without being distracted; complete a normal workday or workweek and perform at a consistent pace without interruptions from psychologically based symptoms; interact with the general public; and travel in unfamiliar places or use public transportation. Tr. 257-58.

At the administrative hearing, plaintiff testified that she becomes frightened and anxious when in public or around people, has panic attacks at least twice a week and debilitating migraines twice a month, becomes confused and cannot concentrate, and can only stand for a few hours at a time due to a leg injury that

occurred on May 21, 2003.  Tr. 304-05, 308, 310-11, 312, 314-16.

In determining plaintiff's RFC, the ALJ discounted Dr. Smolen's assessment and found plaintiff's allegations not credible. Instead, the ALJ relied on the testimony of John Crossen, Ph.D., a non-examining medical expert.

Dr. Crossen testified that while he found support in the record for plaintiff's diagnoses of depression and an anxiety or adjustment disorder, he thought that plaintiff's condition was worsened and exacerbated by misuse of her medications.  Tr. 331-32. Further, Dr. Crossen opined that plaintiff's mental limitations were not "severe," and that prior to 2002, plaintiff was only mildly impaired in activities of daily living, maintaining concentration, persistence or pace, and that plaintiff had no episodes of decompensation.  Tr. 332-33.

Dr. Crossen also testified that the record reflected a worsening in plaintiff's condition in 2002, due to multiple external stressors involving her husband's and daughter's health. Tr. 335-36.  Nevertheless, Dr. Crossen testified that Dr. Smolen had no basis on which to render an opinion that plaintiff was severely limited in her ability to work with others, complete a normal workday, or perform at a consistent pace, because plaintiff was not performing activities that required such abilities during the time that Dr. Smolen treated plaintiff.  Tr. 334.  Further, Dr. Crossen testified that Dr. Smolen's opinion that plaintiff had

moderately severe limitations in responding to criticism, working with others without distracting them, and maintaining socially appropriate behavior and standards of cleanliness were speculative, because plaintiff's medical record contains no evidence of such limitations. Tr. 335. Rather, Dr. Crossen testified that the record reflected mild limitations in plaintiff's ability to function effectively in social situations prior to 2002, and moderate limitations in 2002 and thereafter. Tr. 338. Further, Dr. Crossen believed that plaintiff's condition likely would improve if her stressors resolved and she did not misuse her medications. Tr. 337.

The ALJ adopted the testimony of Dr. Crossen and found that plaintiff's RFC precluded plaintiff from performing work in crowded areas, industrial-type settings or with the general public where customers might become angry or upset. Tr. 20. The ALJ also found that plaintiff had moderate impairments in understanding, remembering, and following complex directions or instructions. Tr. 20. When presented with this hypothetical at the administrative hearing, the vocational expert found that such a person could perform other work as a stock intake worker, light groundskeeper, and janitor. Tr. 349. The VE also testified that additional limitations posed by plaintiff's counsel - such as an inability to travel and work with others - would not affect the ability to perform these jobs. Tr. 352. However, the VE found that an

individual with severe limitations in completing a workday and maintaining pace could not perform the work identified or any other work activity.  Tr. 352.

As a treating psychiatrist, Dr. Smolen's opinion is entitled to special weight and deference, because "[s]he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir. 1989) (citation omitted).  Nonetheless, the ALJ may rely on a non-treating, non-examining medical expert's assessment as long as that opinion is "not contradicted by all other evidence in the record," is "consistent with other evidence," and does not constitute the sole evidence on which the ALJ relied in rejecting the treating physician's opinion. Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

Here, other evidence of record supports Dr. Crossen's testimony that plaintiff had only mild limitations in her ability to function in social situations prior to 2002.  Although the ALJ noted that plaintiff's symptoms worsened in late 2001, plaintiff reportedly engaged in drag-car racing and participated in Native American drumming events through July 2002.  Tr. 84-85, 162, 163-64.  Moreover, plaintiff did not begin treatment with Dr. Smolen until 2002, and no physician rendered a prior opinion of disability.  Therefore, the ALJ did not err in  finding that plaintiff failed to establish disability prior to 2002.

With respect to plaintiff's impairments during and after 2002, the ALJ agreed with Dr. Crossen that Dr. Smolen's assessment of plaintiff's mental RFC was inconsistent with plaintiff's progress assessments, most of which Dr. Crossen deemed unremarkable. Tr. 20, 334. However, Dr. Smolen treated plaintiff on a monthly basis for almost two years prior to the administrative hearing, and - absent contradictory evidence in the record - I cannot find that Dr. Smolen's opinion is outweighed by Dr. Crossen's. Notably, Dr. Crossen was not conclusive in his testimony that plaintiff's psychological impairments could not account for the restrictive functional limitations rendered by Dr. Smolen. In fact, Dr. Crossen testified that Dr. Smolen "could be right" or "could be wrong," but that Dr. Crossen did not discern a basis for Dr. Smolen's assessment. Tr. 335.

While I agree that no evidence supports Dr. Smolen's opinion that plaintiff has moderately severe limitations in her ability to respond appropriately to criticism and maintain appropriate standards of cleanliness, Tr. 204, 278, the record contains evidence - based primarily on plaintiff's self-reports - that plaintiff experiences anxiety and possible panic attacks. Tr. 146-47, 152, 162, 205, 218, 229. Further, the record contains little evidence of plaintiff's activities after 2002 that are inconsistent with her allegations. Given Dr. Crossen's equivocal testimony and the lack of contradictory evidence regarding plaintiff's ability to

function in public, Dr. Crossen's contrary opinion alone cannot provide a sufficient basis Dr. Smolen's assessment regarding plaintiff's ability to work with others, complete a normal workday, and work at a consistent pace.

Finally, the ALJ discounted Dr. Smolen's assessment because it was based primarily on plaintiff's subjective reporting of external stressors, illness and symptoms, which the ALJ found not credible. In particular, the ALJ noted that Dr. Smolen accepted at face value plaintiff's report of a truck accident that resulted in a severe leg injury requiring cardio-pulmonary resuscitation and a stay in the intensive care unit of the hospital.  Tr. 17, 273.  Plaintiff reported to Dr. Smolen that she has flashbacks of the accident, with the "big truck . . . coming at her."  Tr. 273.  The ALJ noted that Dr. Smolen had no access to plaintiff's medical records, and regardless, that plaintiff's medical records contained no evidence of a traumatic leg injury.  Tr. 17.

The ALJ is correct that the record contains no evidence of plaintiff's leg injury, which allegedly occurred on May 21, 2003. Plaintiff has reported repeatedly that she ran over herself with a two and one-half ton truck, and that her left leg was impaled on a one-inch pipe.  Tr. 125, 273, 314.  Plaintiff stated that she received medical care, including surgery and several days in ICU, and that she was "bedridden" for ten days with a draining open wound for three months afterward.  Tr. 125, 279, 317.  At the

11 - OPINION AND ORDER

administrative hearing, plaintiff testified that she "basically was in bed for about 6 weeks due to the injury." Tr. 317. Further, on March 9, 2004, plaintiff reported to Dr. Smolen that she reinjured her left, requiring a soft cast. Tr. 264. Yet plaintiff submitted no relevant medical records regarding this injury.

The lack of medical evidence regarding plaintiff's leg injury generally would be a clear and convincing reason to support the ALJ's credibility determination and the rejection of Dr. Smolen's opinion, because her assessment of plaintiff is based primarily on plaintiff's self-reports of anxiety symptoms. See Batson v. Comm'r of Soc. Sec. Admin, 359 F.3d 1190, 1195-96 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). However, plaintiff maintains that the ALJ did not request medical records regarding plaintiff's injury, and that she did not submit such records because she alleges disability due to panic disorders and anxiety rather than physical limitations.

In addition to the lack of evidence regarding her leg injury, the ALJ found plaintiff's allegations not credible because she maintained an active lifestyle during the period of alleged disability and engaged in activities inconsistent with her allegations. Tr. 20-21. For example, plaintiff alleged an onset date of December 2000 based on her panic disorders and anxiety, yet plaintiff was reportedly drag-car racing and participated in Native American drumming through July 2002. Tr. 84-85. Further,

plaintiff exercised daily, performed household chores, gardening, landscaping, sewing and needlework.  Tr. 21.

Nonetheless, I cannot find that these reasons for rejecting plaintiff's testimony are supported by substantial evidence in the record, because the ALJ's credibility findings are based on plaintiff's activities in 2000, 2001 and 2002.  See Tr. 21, 84-85, 133-34, 149, 159, 164, 197, 224-25.  However, Dr. Crossen testified that plaintiff's mental impairment worsened in 2002, and little evidence of record reflects plaintiff's activities inconsistent with her allegations during and after this time period.

Given the state of the record, I do not find that plaintiff's testimony and the opinion of Dr. Smolen must be credited as true absent further clarification.  See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  As found by the ALJ, Dr. Smolen's assessment is based on plaintiff's self-reports of anxiety and other symptoms; however, the lack of medical evidence regarding plaintiff's leg injury and inconsistent statements of record place her credibility and Dr. Smolen's assessment in question.[1]  At the

---

[1]For example, plaintiff reported to Dr. Smolen in October 2002 that she had never had an injury with loss of consciousness, yet in March 2002 she reported that she was in a car accident where she lost consciousness.  Tr. 203, 224.  Further, plaintiff inconsistent reported that she hears voices, does not hear voices, has no hallucinations, but sees things others do not.  Tr. 204-05, 224, 280-81.  Finally, in October 2001, a physician noted that during a hospital visit for fainting spells and anxiety, plaintiff received "secondary gain from the attention of her husband," and that plaintiff's "photophobia seemed to resolve with examination as long as she remained distracted."  Tr. 198.  However, the ALJ did not

same time, plaintiff is correct that she did not apply for disability benefits based on exertional limitations (despite her testimony), and the ALJ did not request submission of these medical records. Thus, I find that the record requires further development with respect to plaintiff's leg injury, as it bears on plaintiff's functional limitations and her credibility.

Moreover, the only relevant evidence of psychiatric or psychological evaluation contained in the record consists of Dr. Smolen's treatment records and mental RFC assessment and Dr. Crossen's testimony. No other psychiatric or psychological assessment or testing is contained in the record to further inform the nature and severity of plaintiff's limitations resulting from plaintiff's psychological impairments.

Therefore, I find that outstanding issues must be resolved before a determination of disability can be made, and that remand for further proceedings is appropriate with respect to plaintiff's impairments during and after 2002. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). Upon remand, the ALJ shall further develop the record with respect to plaintiff's leg injury and the nature and severity of plaintiff's mental RFC, and further evaluate plaintiff's subjective allegations of disability.

///

_____

rely on this evidence, and the court cannot sustain the ALJ's findings for these reasons. Connett, 340 F.3d at 874 (district court cannot engage in independent fact-finding but is "constrained to review the reasons the ALJ asserts")

CONCLUSION

The ALJ's conclusion that plaintiff did not establish disability under the Act during and after 2002 is not supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this __23__ day of March, 2006.


_____/s/ Ann Aiken_____
          Ann Aiken
United States District Judge

15 - OPINION AND ORDER